IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN R. PEDRO VIDAL<br><br>Defendant. | CRIM. NO.: 16-778 (GAG/SCC) |

**REPORT AND RECOMMENDATION**

Defendants Juan R. Pedro Vidal, Juan L. Pedro Vidal, and Luis Omel Pedro[1], are charged with death-eligible offenses. The three men are related. Juan L. Pedro Vidal is Juan R. Pedro Vidal's brother, and Luis Omel Pedro's father.

The defendants jointly move to lift a Separation Order in effect at the Metropolitan Detention Center ("MDC") in

---

1 Although the Motion to Strike identifies the defendant as "Luis Olmo Pedro," the indictment and other court documents list his full name as "Luis Omel Pedro."

Guaynabo, Puerto Rico, where they are currently incarcerated. *See* Docket No. 413. The defendants claim that the Order prevents them from being housed in the same unit; engaging in family visitation together; and more importantly, participating in joint defense meetings.

MDC imposed the Separation Order at the government's request due to security concerns. Docket No. 423. In an ex-parte submission in support of its opposition to the motion to strike, the government further elaborated on the basis for limiting defendants' access to one another inside MDC. Docket No. 425.[2]

Before filing the motion to strike, the defendants conferred with the government to seek removal of the Separation Order. In the course of those preliminary discussions, the

---

2 The defense asked the Court not to rely on the contents of the ex-parte filing because it could not contradict, or address, the government's statements. Ultimately, the Court does not need to consider the ex-parte submission insofar as our analysis will rest on the constitutionality of face-to-face codefendant meetings, not on the propriety of the Bureau of Prison's ("BOP") security assessment.

USA v. PEDRO-VIDAL                                                                              Page 3

government did not object to at least joint defense meetings between codefendants and their counsel. However, after consulting with MDC's Legal Department, the government learned that BOP policy mandated either total separation, or no separation.[3]

The government objects to the lifting of the Separation Order, arguing that the defendants have not exhausted administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). The PRLA requires a prisoner to exhaust administrative remedies as a pre-requisite to filing suit. In the alternative, the government argues that the Separation Order does not infringe on defendants' constitutional rights.

In preparation for trial, the defendants also filed a motion requesting certain information used in connection with the preliminary screening of potential jurors. *See* Docket No. 416.

The presiding Judge referred the motions at Docket Nos.

---

[3] The defense characterized it as a "unique prohibition" as they are not aware of any similar policy in other jurisdictions.

USA v. PEDRO-VIDAL                                                                 Page 4

413 and 416 to the undersigned for a Report and Recommendation. At defendants' request, I scheduled a hearing on the motion to strike separation order. Docket No. 461.

The hearing was held on May 25, 2018. Both parties argued their positions on the issue of the Separation Order. Since a copy of the Order has not been produced, the parties went forward by proffer.

During the hearing, the parties also discussed the production of the juror questionnaires that defendants had requested at Docket No. 416. The parties agreed to file a stipulation for the Court's adoption.

Having heard the arguments of both sides, and after reviewing the cited authorities, I recommend as follows:

**A. Motion to Strike Separation Order**

Defendants claim that the Separation Order "impermissibly burdens their ability to defend themselves from capital charges" thereby violating the Fifth, Sixth, and Eight Amendment to the United States Constitution. Docket

No. 413.

The Government responds that the District Court lacks jurisdiction to entertain the constitutional arguments because defendants bypassed the PRLA. The PRLA, as amended, 42 U.S.C. § 1997e *et seq*, requires prisoners to exhaust prison grievance procedures before filing suit. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(a). The exhaustion provision of the PLRA states: "No action shall be brought with respect to prison conditions under Section 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The PRLA's exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances, or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

To exhaust administrative remedies, inmates must comply with a multi-step framework that begins with an Administrative Remedy Request Form known as BP-9. *See* 28

USA v. PEDRO-VIDAL												Page 6

C.F.R. § 542.14. Although defendants have admittedly made informal complaints to protest the Separation Order, it appears that they have not followed the formal procedure.

The government proffers that the plain language of the PRLA leaves no doubt that defendants must file an administrative claim with the BOP before seeking the Court's intervention. They posit that the defendants are in essence challenging conditions of confinement, which fall squarely within the ambit of the PRLA. For support, they rely on *United States v. McTier*, No. 05 CR 401(ILG), 2006 WL 2707439, at *1 (E.D.N.Y. Sept. 20, 2006). The defendant in that case challenged an order directing the Warden of the Metropolitan Detention Center to separate him from other codefendants. The District Court found that defendant's request pertained to a condition of confinement, hence requiring exhaustion of remedies under the PRLA.

The defendants characterize the *McTier* decision as "a weak minority view" (Dkt No. 436). Instead, they bring attention to a line of cases holding that a request to remove

USA v. PEDRO-VIDAL                                                                 Page 7

Special Administrative Measures inside a correctional facility is not a "separate action" that requires exhaustion of administrative remedies.

Defendants argued extensively in favor of adopting the ruling of a case from this District, *United States v. Catalán-Román*, 329 F.Supp.2d 240 (D.P.R. 2004). In *Catalán-Román*, the District Court adopted *in toto* a Report and Recommendation from a Magistrate Judge that granted a motion to remove certain conditions of confinement. *See Catalán-Román*, 329 F.Supp.2d at 244. Lorenzo Catalán-Román and other codefendants moved to lift a number of restrictions imposed at MDC Guaynabo, including their removal from general population and transfer into administration segregation, otherwise known as the Special Housing Unit ("SHU").

As in this case, the government argued that the defendants were required to exhaust administrative remedies under the PRLA prior to filing suit, but the District Court held otherwise. The Court reasoned that defendants filed their motion in the pending death-certified action, not in a separate

USA v. PEDRO-VIDAL                                                        Page 8

case. *See Catalán-Román*, 329 F.Supp.2d at 250. Moreover, the Court viewed the motion not as a challenge to prison conditions, but as a challenge to an administrative segregation. In that sense, the Court characterized the matter as a *habeas corpus* petition, one that does not require exhaustion of remedies.

The defense also alludes to *United States v. Savage*, Crim. No. 07-550-03, 2010 WL 4236867 (E.D. Penn. Oct. 21, 2010), to support the view that a capital defendant's motion to lift conditions of imprisonment that is filed in the underlying criminal case is not an "action" that requires prior exhaustion of administrative remedies.

The *Savage* court held that a capital defendant's pre-trial motion to remove Special Administrative Measures ("SAMS") filed in the underlying criminal case is not an "action" within the PRLA's meaning. *Id.* at *6. The Court, however, made a distinction between motions "challenging aspects of prison life that have no bearing on the ability of the court to manage the criminal prosecution," and those that

directly implicate the Court's ability to manage a criminal prosecution. *Id.* Because the Court found that Savage's motion to remove the SAMs fell into the second category, it held that the defendant did not have to exhaust administrative remedies under the PRLA. *Id.* at *7. Had his challenge been related to aspects of incarceration that did not implicate the Court's ability to manage his criminal case, the Court would have required exhaustion.

With this legal backdrop in mind, I conclude that defendants did not have to exhaust administrative remedies under the PRLA. I find that the case law that defendants cite is more persuasive than the government's. Even though at the hearing both parties made reference to *Savage* for support, I believe that the defense's reading is a closer fit to the rationale that the *Savage* court adopted.

If we follow the *Savage* ruling, the motion to remove the Separation Order would be viewed as a pre-trial motion within the underlying criminal case that directly affects the Court's ability to manage the criminal proceedings. After all,

| USA v. PEDRO-VIDAL | Page 10 |
|---|---|

defendants are claiming that the Separation Order hinders their ability to prepare an effective joint defense.

The same conclusion could be reached by applying the *Catalán-Román* framework. In their motion to remove the Separation Order, defendants seek a less restrictive form of custody. Hence, if we viewed their petition as a *habeas corpus*, the exhaustion of administrative remedies would not be required.[4]

Next, the Court will address the constitutional challenge to the Separation Order. The defendants do not claim that the Separation Order prevents them from meeting with their respective attorneys, or with other defendant's counsel to prepare for trial. Instead, the defendants seek more access to

---

4 The *Catalán-Román* Court also made a finding that it was futile for defendants to proceed with the exhaustion of administrative remedies. The defense in this case also raised the "futility" exception because it argues that MDC will not likely reconsider a Separation Order that the government requested. In its brief, though, the government pointed to *Medina-Claudio v. Rodríguez-Mateo*, a First Circuit case recognizing that there is no futility exception to the PRLA exhaustion requirement. *Medina-Claudio v. Rodríguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002).

one another, claiming that their right to meet in person inside MDC is encompassed within their right to prepare a joint criminal defense.

Although the defendants recognize that there is no constitutional right *per se* to meet and interact with codefendants in prison, they state that a capital case such as this one requires heightened protections. According to the defense, the "uncertainty" and the "weight of capital charges" are subjective elements that contribute to a defendant's state of mind and regular meetings between co-defendants' would improve their psychological state. In addition, being housed in the same unit would facilitate joint defense meetings.

The government responds that several district courts, including the District of Puerto Rico, have rejected the argument that the joint defense privilege requires that inmates meet face-to-face to prepare their defense. As for the mental state of the co-defendants, the government points out that the purported "complex matters of personal and family history" which co-defendants professed as one of the reasons

USA v. PEDRO-VIDAL                                                    Page 12

for their prospective joint meetings, do not merit bypassing the BOP's security assessment.[5]

For support, the government highlights a Report and Recommendation in *United States v. Oscar Martínez-Hernández, et al.*, No. 15-cr-75 (GAG/BJM), where the Magistrate Judge found that defendants were not entitled to meet as a group with their attorneys. *See* Docket No. 1631 of Crim. No. 15-075. After independently researching the issue, which resulted in a thorough survey of the pertinent legal authorities, the Court found that the case law embraced "divergent views as to whether defendants, who are pretrial detainees, must be allowed to meet as a group, along with counsel, in order to prepare a joint defense." *See* Docket No. 1631 of Crim. No. 15-075, at pg. 11.

Juxtaposing the government and the defendants' positions, the Court ultimately reasoned that allowing

---

5 The defendants argued that close physical proximity would allow them to "comfort one another" through the stress of capital charges. We find no basis in precedent to afford this relief.

| USA v. PEDRO-VIDAL | Page 13 |
|---|---|

defendants to meet as a group with their attorneys would violate their separation orders, the bases of which had not been challenged.[6] Citing to *United States v. Wegers*, No. CR05-231C, 2006 WL 753242 (W.D.Wash. Mar. 20, 2006), a case that the government also discusses in its brief in this case, the Court concluded that no authority supported the view that "separate designations authorized under § 524.72(f) cast doubt on [a pretrial detainee's] constitutional right to effective pretrial assistance of counsel." Docket No. 1631 at pg. 13, *quoting Wegers*, 2006 WL 753242, at *1.

I see no reason to depart from the Court's ruling in *Martínez-Hernández*, a Report and Recommendation which, coincidentally, was adopted in full by the presiding Judge in this case.

The cases that defendants cite in their briefs do not sway

---

6 The defendants in this case could not challenge the basis of the Separation Order because the specific security concerns upon which it was premised were detailed in an ex-parte submission. Anyhow, and as we previously expressed, our constitutional analysis does not contemplate the factual foundation of the Separation Order. *See* n. 2.

the weight of authorities in their favor as none of them adopt their expansive reading of the joint defense rule. One case, though, merits mentioning because the defendants proffered it as a model for their proposed group meetings. In *United States v. Damico*, No. 94 CR 723, 1995 WL 221883 at *23 (N.D. Ill. Apr. 10, 1995), the defendant sought an order to allow his counsel to meet with him outside the detention center, and to meet with the other attorneys and defendants for joint defense sessions. The Court issued the following Order:

> While the court is not agreeable to any individual or joint defense meetings occurring at defense counsel's office, the Court orders that the United States Attorney's Office, the United States Marshals Service and the Metropolitan Correctional Center provide suitable accommodations for defendants and their counsel who wish to participate in such joint defense meetings from this day forward.

*Id.* at *23.

The defense urges this Court to "enter a similar order" and to strike the current separation order. Docket No. 413. Although there is no mention in *Damico* of a separation order,

| USA v. PEDRO-VIDAL | Page 15 |
|---|---|

the Court proposed an analogous compromise during the hearing when it suggested that the defendants and their attorneys could explore the possibility of carrying out joint defense meetings at the Federal Building in Chardón Avenue. The defendants responded that it would be inconvenient to coordinate the logistics of such meetings and the government expressed reservations.

After revisiting all the arguments, and examining the case law, I find that the defendants do not have a constitutional right to joint defense meetings, and I also find that the Separation Order does not deprive them of their constitutionally protected rights under the Fifth, Sixth, or Eight Amendments. However, because neither the government nor the BOP presented any compelling reasons not to have joint defense meetings outside MDC, I recommend that the presiding Judge allow the defendants to have joint defense meetings in the Federal Court House at a suitable arranged location, perhaps a courtroom.

### B. Juror Questionnaires

The defense is seeking certain materials in connection with the juror selection process, specifically, Juror Lists and Juror Qualification Questionnaires. The government responded that the defense has not made a sufficient showing of need for that information and that there was a report available from the Clerk's Office that would provide much of the information sought.

The parties proposed an arrangement whereby the Court would order the Clerk's Office to provide the report within 14 days, with no objection to additional time if needed. From then on, the defense would have 30 days to review the documents and if they require further information, they would need to state the reasons why they have a compelling need for additional information.

The Court ordered the parties to discuss the specific language of the Order and submit it for the Court's review and adoption.

The parties have not yet filed the document, which

| USA v. PEDRO-VIDAL | Page 17 |
|---|---:|

prevents the Court from making a recommendation as to the stipulation, as originally intended.

IT IS SO RECOMMENDED.

The parties have fourteen days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 21st day of June, 2018.

S/ SILVIA CARREÑO-COLL
UNITED STATES MAGISTRATE JUDGE