# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| USA, <br><br> Plaintiff, <br><br> v. <br><br> PEDRO-VIDAL, <br><br> Defendant. | CRIM NO. 16-778 (GAG) |

## OPINION AND ORDER

For more than a century United States citizens residing in Puerto Rico —a United States territory[1]— have never participated in presidential elections nor in those for voting representatives in the Senate and House.[2] Notwithstanding, these approximately 3.4 million disenfranchised United States citizens are subject to the same federal civil and criminal laws as their brethren in the States.

---

[1] The United States acquired Puerto Rico from Spain in 1898, as a result of the Treaty of Paris, following the Spanish-American War. Congress first conferred statutory United States citizenship to persons born in Puerto Rico in 1917. See Jones Act (Puerto Rico), Ch. 154, 39 Stat. 951 (1917). Effective January 16, 1941, however, Congress bestowed natural born United States citizenship to all those persons born in Puerto Rico, just as those born in the States and the then territories of Alaska and Hawai'i. See 8 U.S.C. § 1402.

[2] The Court of Appeals for the First Circuit has been adamantly clear in holding that absent statehood or a constitutional amendment such predicament will not change. See Igartua De La Rosa v. United States, 32 F.3d 8 (1st Cir. 1994), *cert.denied* 514 U.S. 1049 (1995) ; Igartua De La Rosa v. United States, 229 F.3d 80 (1st Cir. 2000); Igartua De La Rosa v. United States, 386 F.3d 313 (1st Cir. Oct 14, 2004*), reh'g granted, judgment vacated*, 404 F.3d 1 (1st Cir. Mar. 14, 2005) (order granting panel rehearing), Igartua de la Rosa v. United States, 407 F.3d 30 (1st Cir. May 12, 2005), *on reh'g en banc sub nom*, Igartua-De La Rosa v. United States, 417 F.3d 145 (1st Cir. August 3, 2005) *reh'g en banc*.; Igartua De La Rosa v. United States, 626 F.3d 592 (1st Cir. 2010), *cert denied*, 566 U.S. 986 (2012); Igartúa v. Obama, 842 F.3d 149, 150 (1st Cir. 2016), *cert. denied* Igartua v. Trump, 2018 U.S. LEXIS 3695 (U.S., June 18, 2018), 138 S. Ct 2649 (2018). See also Romeu v Cohen, 265 F. 3d 118 (2nd Cir. 2001); Segovia v. United States, 880 F.3d 384 (7th Cir. 2018), *cert. denied*, 2018 U.S. LEXIS 6003 (U.S., Oct. 9, 2018), 139 S. Ct. 320 (2018) (both federal courts of appeal note that Congress has failed to permit those moving to Puerto Rico from a State to vote in their last place of residence. Ironically, United States citizens who move from a State to a foreign country and to the Commonwealth of the North Mariana Islands — also a U.S. Territory— may continue to vote in national elections).

**Criminal No. 16-0778 (GAG)**

The issue now before this Court is whether said democratic fallacy constitutes a Due Process violation which, in turn, precludes the United States from seeking the death penalty as to defendant.

**I.     BACKGROUND**

A grand jury in the District of Puerto Rico charged defendant Juan Pedro Vidal with carjacking resulting in death, use of a discharged firearm during the commission of a crime of violence, kidnapping, and aiding and abetting. See 18 U.S.C. §§§§ 2119(3), 924(c)(1)(A)(iii), 1201, and 2; see also (Docket No. 3-2, 2). Because of the victim's death, defendant became death penalty eligible. On June 28, 2018, the Attorney General of the United States certified defendant for the death penalty. (Docket No. 484). The Court has set the case for trial in 2020.

On October 9, 2018, Defendant moved to strike the death penalty on a variety of grounds. (Docket No. 527). The Court on April 2, 2019, dismissed all arguments therein, except that presently before the Court. (Docket No. 634).

**II.    ANALYSIS**

The *total* disenfranchisement of United States Citizens in Puerto Rico within our National government is a historical fact that is not in dispute. Since the United States acquired the territory in 1898, Congress has enacted thousands of federal laws that apply therein. On most occasions, these laws apply to citizens in the territory exactly as they would to citizens in the States. Other times, certain laws discriminate against citizens in the territotry, for example, those which cap Social Security, Medicare, and Veteran benefits. In the case at bar, the law before the Court, to wit, the federal death penalty statute, falls within the first category. Had defendant been indicted in the State of Oklahoma, for example, he would be treated equally as to how he is treated in Puerto Rico. In other words, this particular federal statute does not discriminate against United States citizens in Puerto Rico.

**Criminal No. 16-0778 (GAG)**

The more profound conundrum, however, is the fact that, unlike United States citizens in the States, those in Puerto Rico have never elected federal lawmakers, nor voted for the federal executive. As a corollary, United States citizens in Puerto Rico do not participate through elected officials in the process of nominating and confirming the Attorney General, nor the United States Attorney and District Judges in Puerto Rico. These federal officials all participate directly in death penalty prosecution and trial of defendant.

Such electoral disenfranchisement and lack of participation in federal affairs is without question undemocratic and unacceptable in a Nation that was founded over two hundred and forty-three (243) years ago on the sacrosanct principle of consent of the governed. Is such territorial predicament unconstitutional? The answer in no.

Puerto Rico's democratic void lies in the hands of Congress. It is not within the Article III purview and whim of federal courts to order Puerto Rico admitted to the Union as a State or have its commonwealth status changed in any form so that a more democratic form of government ensue. This lies within the political process. What Court can and must do is safeguard the constitutional rights of United States citizens in Puerto Rico should a violation of a fundamental or other constitutional right exist.

In our Nation's history, no Act of Congress has even been held unconstitutional based on the principle of consent of the governed. Indeed, said concept is not a fundamental guarantee within the Bill of Rights, nor in any specific article of the Constitution.

Puerto Rico has not been the only federal territory since 1776. Indeed, with the exception of the thirteen original States, almost all the other states underwent a period of territorial governance before admission to the Union. During such territorial periods, federal laws applied therein, despite a lack of participation in the federal elective process. Hence, Puerto Rico's colonial limbo is not a

**Criminal No. 16-0778 (GAG)**

unique happenstance in territorial governance. If the Commonwealth becomes a State, as did Hawaiʻi in 1959, United States citizens therein will enjoy full participation in the federal executive and legislative branches. United States citizens in the territory, however, cannot simply challenge federal laws and action that treat them *identically* to every other United States citizen within the Nation by crying disenfranchisement.

The fact that United States citizens in Puerto Rico in 1952 adopted their own Constitution which prohibits capital punishment is inconsequential. Several other State constitutions also forbid such action. However, local constitutions do not trump federal action. <u>United States v. Acosta Martinez</u>, 252 F.3d 13, 20-21 (1st Cir. 2001).

In sum, the Court does not find that defendant's capital punishment predicament runs afoul of the Constitution. The political disenfranchisement of United States citizens in Puerto Rico in no way precludes the Unites States from enacting and executing criminal laws that apply to all citizens of this Nation alike. Defendant's exposure to capital punishment, based on a heinous and depraved crime if proven beyond a reasonable doubt, is not barred by his lack of access to the political process. Accordingly, his Motion to Strike the Death Penalty (Docket No. 593) is **DENIED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 4th day of April, 2019.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge